UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                   :

VICTOR GUZMAN,                            :
                              Plaintiff,     :
                                             :         11 Civ. 5834 (JPO)
                     -against-          :
                                           :      OPINION AND ORDER
UNITED STATES OF AMERICA, *et al.*,   :
                                         :
                           Defendants.  :
                                         :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Victor Guzman brings this civil rights and tort action against Jason Robles, Joseph

Mercurio, Cornelius P. Clancy, Michael Reverendo, Michael Bryant, Kevin Roy, Bruce Taylor

(collectively, "the Individual Defendants" or "the Officers"), the United States of America, and

the City of New York ("the City"). Plaintiff asserts claims for (1) false arrest and imprisonment

(Count I); (2) malicious prosecution (Count II); and (3) violations of his Fourth and Fifth

Amendment rights, pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 389 (1971) (Counts III-V). Previously, all Defendants

moved to dismiss the Second Amended Complaint ("the Complaint"). In February 2013, the

Court granted in part and denied in part the United States' and Individual Defendants' partial

motion to dismiss and denied the City's motion. *See Guzman v. United States of America*, No.

11 Civ. 5834 (JPO), 2013 WL 543343 (S.D.N.Y. Feb. 14, 2013). Presently before the Court is

the City's motion for partial reconsideration of the Court's opinion. For the reasons that follow,

the City's motion is granted.

I.      **Background**

Familiarity with the facts of this case is presumed.  Accordingly, the Court relates only those facts relevant to the instant motion.

A.      **Factual Background**

Guzman's claims stem from the search of his home on the night of April 29, 2009, conducted by the Individual Defendants, and his subsequent arrest after drugs were found therein.  In his Complaint, Guzman asserts two state tort actions against Defendants:  false arrest and malicious prosecution.  In addition, he alleges constitutional torts, asserting violations of his Fourth and Fifth Amendment rights pursuant to § 1983 and, insofar as the claims are against officers of the federal government, *Bivens*.  In *Guzman*, the Court dismissed Plaintiff's constitutional claims against the United States and its officers in their official capacities on sovereign immunity grounds.  *See* 2013 WL 543343, at *11-12.  However, the Court denied the City's motion to dismiss Plaintiff's § 1983 claims against it, determining that Plaintiff's Complaint sufficiently pleaded a policy or custom that was plausibly violative of his constitutional rights.  *Id.* at *12-13.  The City now seeks reconsideration of that denial.

In determining that Guzman had sufficiently pleaded his constitutional claims against the City, the Court cited paragraph 494 of the Complaint, which states, in part, that: "[t]he actions of the individual defendants . . . were taken pursuant to the [] de facto policies and/or well-settled and widespread customs, policies, and practices of THE CITY OF NEW YORK, which were and are implemented by members of its police department."  In support of this allegation, Guzman claimed as follows:

> a.  Members of the New York City Police Department are encouraged and/or allowed by their supervisors to use coercive and intimidating interrogation techniques, including threatening arrest and deportation of the suspects and family

members—i.e., without fear of reprimand, discipline, or even re-training by the New York City Police Department.

b.  Members of the New York City Police Department are encouraged and/or allowed by their supervisors to conduct illegal, intrusive, and excessive searches and seizures of civilians—i.e., without fear of reprimand, discipline, or even re-training by the New York City Police Department.

c.  Members of the New York City Police Department are encouraged and/or allowed by their supervisors to apply coercive and intimidating interrogation techniques, in violation of a suspect's *Miranda* rights even after said suspect exercises his *Miranda* rights not to speak to police officers—i.e., without fear of reprimand, discipline, or even re-training by the New York City Police Department.

d.  New York City Police Officers, engaged in systemic and ubiquitous perjury, both oral and written, to cover-up constitutional and state law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates.   They did so with the knowledge and approval of their supervisors, commanders and Police Commissioners  who all:

i.  tacitly accept and encourage a code of silence wherein police officers refused to report other officers misconduct or tell false and incomplete stories designed to cover for and/or falsely exonerate accused police officers; and

ii.  encourage and/or fail to discipline officers for "testifying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil right violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians; and

e.  The New York City Police Department AND THE CITY OF NEW YORK with the knowledge, approval and encouragement of the Police Commissioners, fail to properly train, supervise and/or discipline officers concerning the constitutional rights of individuals in their care and custody.

Additionally, in paragraphs 502-504 of the Complaint, Guzman alleges that the constitutional wrongs he asserts are the result of "systemic failures" that have "caused [the City's] police officers to believe that [unconstitutional] conduct" is permissible.  Specifically, this section alleges that the violative conduct includes "coercive and intimidating interrogation techniques," which involve, for example, the threat of "deportation of the suspects and family members [sic] civilians"; "illegal, intrusive, and excessive searches"; and violation of a suspect's *Miranda* rights, "even after said suspect exercises his *Miranda* rights not to speak to police officers."   The Complaint also alleges deliberate indifference on the part of the City to the use of coercion, threats, and *Miranda* violations, especially as applied to immigrants or citizens of Hispanic descent.  (Compl. at ¶ 496.)

### B.  Procedural Background

The City filed its motion for reconsideration on February 28, 2013.  (Dkt. No. 63.) Plaintiff opposed the motion on March 14, 2013 (Dkt. No. 66), and the City replied on March 21, 2013 (Dkt. No. 68.)

## II.  Discussion

### A.  Legal Standard

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quotations and citation omitted).  Thus, the standard for granting such a motion is accordingly "strict."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Generally, courts will only reconsider prior opinions in three circumstances: (1) "an intervening change in controlling law"; (2) "the availability of new evidence"; or (3) "to correct a clear error or prevent manifest injustice."  *Cordero v. Astrue*, 574

F. Supp. 2d 373, 379-80 (S.D.N.Y. 2008) (quotations and citations omitted).  "[On a Local Rule 6.3 motion,] a party may not advance new facts, issues, or arguments not previously presented to the Court."  *Polsby v. St. Martin's Press*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at * 1 (S.D.N.Y. Jan. 18, 2000) (quotations and citations omitted).  In other words, "in reviewing motions for reconsideration courts will not 'tolerate [ ] efforts to obtain a second bite at the apple.'"  *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 160 (JPO), 2013 WL 4028147, at *2 (S.D.N.Y. Aug. 8, 2013) (quoting *Goonan v. Fed. Reserve Bank of New York*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 S.D.N.Y. Apr. 5, 2013) (omission in original)).

## B.    *Monell* Liability

"It is axiomatic that municipalities cannot be held liable pursuant to § 1983 on a *respondeat superior* theory."  *Betts v. Shearman*, No. 12 Civ. 3195 (JPO), 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  Instead, "to hold a city liable under 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2009) (quotations and citation omitted); *accord Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (same).  In order to allege such a policy or custom, a plaintiff may assert one of the following:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; *or* (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Saenz v. Lucas*, No. 07 Civ. 10534 (WCC), 2008 WL 2735867, at *5 (S.D.N.Y. July 9, 2008)

(emphasis added); *accord Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("In limited

circumstances, a local government's decision not to train certain employees about their legal

duty to avoid violating citizens' rights may rise to the level of an official government policy for

purposes of § 1983."); *Usavage v. Port Authority of New York and New Jersey*, No. 10 Civ. 8219

(JPO), 2013 WL 1197774, at *20 (S.D.N.Y. Mar. 26, 2013) (the "failure to train theory of

liability requires proof of 'deliberate indifference to the rights of persons with whom the

[employees] come into contact.'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

In other words, "boilerplate" allegations will not suffice. *Id.* (citation omitted).

      While *Monell* claims are not subject to a "heightened" pleading standard beyond that

defined in Rule 8(a)(2), *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination

Unit*, 507 U.S. 163, 168 (1993), such claims nevertheless must meet the plausibility requirements

of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).   "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," *id.* (citation omitted), will no more suffice in a *Monell* claim than in any

other, more standard, § 1983 allegation.   *See Plair v. City of New York*, 789 F. Supp. 2d 459, 469

(S.D.N.Y. 2011) ("Following *Iqbal* and *Twombly*, *Monell* claims must satisfy the plausibility

standard[.]").   Accordingly, "[t]o allege the existence of an affirmative municipal policy, a

plaintiff must make factual allegations that support a plausible inference that the constitutional

violation took place pursuant either to a formal course of action officially promulgated by the

municipality's governing authority or the act of a person with policymaking authority for the

municipality."   *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citations

omitted).   In sum, without more, "[t]he allegations [a defendant] acted pursuant to a 'policy,'

without any facts suggesting the policy's existence, are plainly insufficient." *Id.* at 545-46

(citation omitted); *see also Santiago v. City of New York*, No. 09 Civ. 856, 2009 WL 2734667, at

*3 (E.D.N.Y. Aug. 25, 2009) ("It is questionable whether the boilerplate *Monell* claim often

included in many § 1983 cases, including this one, was ever sufficient to state a claim upon

which relief could be granted. . . . In light of [*Iqbal*] and [*Twombly*] it is now clear that such

boilerplate claims do not rise to the level of plausibility." (citations omitted)).

### C.  Application of Law to Facts

The City contends that the Court overlooked *Twombly* and *Iqbal* in determining whether

Guzman sufficiently pleaded his *Monell* claim.  (Defendant City's Memorandum in Support,

Dkt. No. 65 ("Def.'s Mem."), at 5.)  The City does not suggest that Guzman is required to meet a

"heightened" pleading standard for his *Monell* claim, but instead argues that Plaintiff did no

more than "recit[e] the elements of a cause of action," which is plainly insufficient under

*Twombly* and *Iqbal*.  (*Id.* at 6 (quotations and citation omitted).)  Assuming that Plaintiff

adequately pleaded several constitutional violations, the City notes that Plaintiff's Complaint is

devoid of a single, non-conclusory allegation from which the Court could have plausibly inferred

the existence of a violative policy or custom.  (*Id.* at 6-8.)  In particular, the City takes issue with

the Court's reliance on *Leatherman* and *Rheingold v. Harrison Town Police Dep't*, 568 F. Supp.

2d 384, 394 (S.D.N.Y. 2008).  Given that *Leatherman* predates both *Twombly* and *Iqbal*, the City

highlights that it "does not set forth the proper standard under which a Court should evaluate

whether a run-of-the-mill complaint is sufficient to survive a motion to dismiss under Rule 8."

(Def.'s Mem. at 8.)  The City also contests the Court's citation of *Rheingold* for the proposition

that *Leatherman* "specifically rejected the argument that a plaintiff must do more than plead a

single instance of misconduct to establish municipal liability under section 1983."  (*Id.* at 13

(quotations and citation omitted)); *see also Rheingold*, 568 F. Supp. 2d at 394; *Guzman*, 2013
WL 543343, at \*12.  Additionally, the City notes that the Second Circuit has continued to cite its
opinion in *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993), for the proposition that
"merely asserting the existence of a municipal policy is insufficient absent allegations of
underlying facts" (Def.'s Mem. at 12), despite the Supreme Court's rejection of *Dwares*' central
holding that *Monell* claims require a heightened standard in *Leatherman*.

   The City is correct in noting that, when alleging a pervasive, albeit unofficial, pattern or
practice carried out by officials without final policymaking authority, "[a] single incident alleged
in a complaint, especially if it involved only actors below the policymaking level, *generally* will
not suffice to raise an inference of the existence of a custom or policy." *Dyno v. Vill. of Johnson
City*, 240 F. App'x 432, 434 (2d Cir. 2007) (emphasis added) (quotations omitted) (quoting
*Dwares*, 985 F.2d at 100); *accord Carlisle v. City of Yonkers*, 104 F.3d 352, 352 (2d Cir. 1996)
("As a general matter, however, a municipal policy cannot be inferred from a single incident of
illegality. . . . Because [Plaintiff's] complaint and supporting documents were insufficient to
establish a custom or policy of discriminatory arrests, the district court properly granted
summary judgment for the City and the YPD." (citation omitted)); *Brogdon v. City of New
Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally
insufficient to establish the affirmative link between the municipal policy or custom and the
alleged unconstitutional violation." (citation omitted)).  Additionally, with respect to the failure
to train theory of municipal liability, advanced by Plaintiff in paragraphs 502-506 in his
Complaint, the alleged deprivation must have "occurred as the result of a faulty training
program, 'rather than as a result of isolated misconduct by a single actor . . . .'" *Toliver v. City of
New York*, No. 10 Civ. 5806 (SHS)(JCF), 2012 WL 6849720, at \*7 (S.D.N.Y. Sept. 25, 2012)

(quoting *Amnesty Am. v. Town of Hartford*, 361 F.3d 113, 130 (2d Cir. 2004)), *report and recommendation adopted*, No. 10 Civ. 5806 (SHS), 2013 WL 146088 (S.D.N.Y. Jan. 14, 2013). This requirement—the so-called "identified training deficiency"—together with a "close causal relationship" between the training failure and the constitutional wrong, reflects a requirement that "plaintiffs [] prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensur[ing] that a failure to train theory does not collapse into *respondeat superior* liability."  *Amnesty Am.*, 361 F.3d at 130.

        The City wrongly assumes that the Court disregarded *Twombly*, *Iqbal*, and their progeny. The Court's prior opinion clearly outlined the applicable legal standard for a motion to dismiss, citing both cases.  Moreover, the Court's analysis of Guzman's *Monell* claim reflected a conclusion that Guzman's allegations with respect to the City's policy, custom, or practice were *plausible* on their face, highlighting the Court's awareness of the relevant precedent and its effect.  *See Guzman*, 2013 WL 543343, at *12.  Nevertheless, it was error to maintain the *Monell* claim in light of the Complaint's boilerplate allegations and this particular claim's lack of factual support.  As this Court has previously observed, "[t]o state there is a policy does not make it so." *Betts*, 2013 WL 311124, at *16; *accord Plair*, 789 F. Supp. 2d at 469 ("Here, the complaint lacks sufficient factual details concerning *Monell* liability and contains boilerplate allegations of unconstitutional policies and practices.  Specifically, Plaintiff conclusorily alleges that the City 'permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of plaintiff's beatings [which] constituted a municipal policy, practice or custom and led to plaintiff's assault.'" (citations omitted; alteration in original)).

9

And while *respondeat superior* is a valid theory by which a plaintiff may assert a state tort claim against a municipality, as Guzman has done here, a *Monell* claim pursuant to § 1983 requires something more, and is not to be equated with, nor subsumed into, agency theory.  *Cf. Abreu v. City of New York*, 657 F. Supp. 2d 357, 360-61 (E.D.N.Y. 2009) ("In this regard, Abreu's complaint succinctly states one of the core legal concepts animating *Monell* liability. But it does absolutely nothing else.  No factual matter of any kind accompanies plaintiff's rote recitation of *Monell*.  And the sparse facts that elsewhere make their way into the pleading, and which outline a single, detached incident of misconduct by a few non-policy level officers, in no way suggests a deliberate choice by municipal policymakers to turn a blind eye to unconstitutional conduct." (citations omitted)).  At bottom, Guzman's Complaint merely recites, without factual support, that the threats and coercion to which he was subjected are the products of an unofficial policy, carried out by officers and sanctioned by the City.  Additionally, with respect to the failure to train theory, there are no allegations from which the Court could infer deliberate indifference on the part of policy-making officials or even the required causal link between a failure to train and the resultant harm.

Accordingly, upon reconsideration, Guzman's *Monell* claim is dismissed.

III.     **Conclusion**

For the foregoing reasons, the City's motion for partial reconsideration is GRANTED,

and Plaintiff's *Monell* claim against the City under 42 U.S.C. § 1983 is hereby dismissed.

The Clerk of Court is directed to close the motion at docket entry number 63.


SO ORDERED.


Dated: New York, New York
       September 13, 2013

                                        _____
                                        J. PAUL OETKEN
                                        United States District Judge

11